**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| M.A. Bullard,<br><br>    Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-17-08255-PCT-DGC<br><br>**ORDER** |

Plaintiff, M.A. Bullard, seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. For reasons set forth below, the Court will vacate the Commissioner's decision and remand for an award of benefits.

**I.  Background.**

Plaintiff is a 51 year-old woman with an eighth grade education. A.R. 38. She previously worked as housekeeper, salesperson, and a cleaning person. A.R. 39-40. Plaintiff applied for disability benefits on January 2, 2014, alleging disability beginning January 1, 2013. A.R. 17. Plaintiff later amended her alleged onset date to July 28, 2014. A.R. 17. On May 17, 2016, Plaintiff and a vocational expert appeared and testified at a hearing before the ALJ. A.R. 36-57. On September 29, 2016, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the

Social Security Act. A.R. 27-28. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on November 3, 2017. A.R. 1-3.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends.

*Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, and that she had not engaged in substantial gainful activity since July 28, 2014. A.R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease and obesity.[1] A.R. 20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R 22. At step four, the ALJ found that Plaintiff had the RFC to perform light work, including her past work as a housekeeper and salesclerk. A.R. 22, 27.

**IV. Analysis.**

Plaintiff argues the ALJ's decision is defective for three reasons: (1) the ALJ erred in rejecting Dr. Yamaguchi's assessment; (2) the ALJ rejected Plaintiff's symptom testimony without specific, clear, and convincing reasons, supported by substantial

---

[1] The ALJ found that Plaintiff's depression and anxiety were not severe impairments. A.R. 20. Plaintiff does not challenge that finding. Doc. 19 at 3.

- 3 -

evidence; and (3) the ALJ erred by determining Plaintiff's RFC without giving reasons supported by substantial evidence.

### A. Medical Opinion Evidence.

#### 1. Legal Standard.

A physician's opinion may be a treating source, examining source, or non-examining source. *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 2017); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician is one who provides or has provided the claimant with medical treatment or evaluation, or who has an ongoing treatment relationship with the claimant. *Id.* at § 404.1527(a)(2). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (factors ALJ considers when evaluating opinion evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

#### 2. Dr. Yamaguchi.

The ALJ gave Dr. Yamaguchi's opinion no weight. A.R. 26. Because Dr. Yamaguchi is a treating physician whose opinion is not contradicted by another doctor, the ALJ could discount his opinion only for clear and convincing reasons. *Lester*, 81 F.3d at 830-31.

On August 31, 2016, Dr. Yamaguchi completed a check-box form indicating that Plaintiff was significantly disabled. He opined that Plaintiff could continuously sit for

only 30 minutes; continuously stand for only 30 minutes; sit for two hours or less in an eight-hour workday; stand and walk for two hours or less in an eight-hour workday; rarely lift ten pounds; rarely carry five pounds; rarely stoop, squat, crawl, climb, and reach; occasionally handle, grip or grasp, and push or pull hand controls; rarely perform fingering and fine manipulation; and not use her feet for repetitive movements. A.R. 793-95. Dr. Yamaguchi opined that Plaintiff would have a total restriction around unprotected heights, moving machinery, exposure to dust, fumes, and gases, and exposure to marked changes in temperature or humidity. *Id.* Dr. Yamaguchi also opined that Plaintiff would have a moderate restriction with occupational driving. *Id.*

The ALJ identified several reasons for giving the opinion no weight: it (1) was inconsistent with objective medical findings in the record; (2) was so extreme that Plaintiff would be bedridden, when she was not; (3) included no contemporaneous treatment records; (4) did not list any current diagnosis of conditions which supported Plaintiff's extreme limitations; (5) did not include any indication of a need for a hand-held device, such as a cane, even though the form included a space for such an indication; and (6) appeared to be based on claimant's subjective complaints rather than objective clinical findings. A.R. 25-26.

With respect to his first basis, the ALJ identified two medical findings: (1) a lumbar spine x-ray in April 2014, which showed mild curvature in the lumbar spine, minimal hypertrophic degenerative changes, no fractures or focal osseous lesions, no subluxations and only mild facet arthropathy at L5 to S1 (A.R. 330); and (2) a lumbar spine MRI in July 2015, showing no severe spinal canal or neural foraminal narrowing, normal alignment of the lumbar spine, normal lumbar vertebrae in appearance and signal without fracture or focal lesions, and mild degenerative disc disease at all levels, with the exception of L1-L2, which had moderate degenerative disc disease (A.R. 383). The ALJ attempted to schedule an independent neurological or neurosurgical evaluation of Plaintiff to test Dr. Yamaguchi's opinion, but Plaintiff was unable to attend the appointment. A.R. 26; A.R. 56-57.

Plaintiff makes a passing statement that the April 2014 x-ray is dated prior to her alleged onset of disability. Doc. 19 at 11. If Plaintiff is arguing that the ALJ should not have considered the x-ray for this reason, the Court disagrees. The x-ray was taken only four months before Plaintiff's alleged onset of disability. Plaintiff provides no reason that an x-ray so close in time to Plaintiff's disability must be disregarded by the ALJ.

Plaintiff argues that the ALJ mischaracterized the July 2015 MRI and omitted significant details from the diagnostic report. Doc. 19 at 11. Plaintiff refers to the MRI findings of a broad-based disc bulge with a right paracentral protrusion, and associated facet hypertrophy at L4-5, which resulted in mild narrowing of the right lateral recess with possible impingement of the traversing L5 nerve root. *Id.*; A.R. 383. The ALJ noted that the MRI report also found many normal conditions, mild degenerative disc disease at all levels, and moderate degenerative disc disease at L1-L2. A.R. 26.

Although the MRI evidence is mixed, it is also the kind of evidence that requires medical expertise to interpret. The Court generally must defer to the ALJ's rational interpretation of the evidence, but the Court cannot find that the ALJ's expert-like dissection of the x-ray and MRI reports constitutes a clear and convincing reason to disregard Dr. Yamaguchi's opinion. ALJs cannot usurp the role of doctors when interpreting medical evidence, particularly highly technical medical evidence like x-rays and MRIs. *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("The ALJ . . . reject[ed] the informed medical opinion of [Plaintiff's] primary treating physician and instead improperly substituted her judgment for that of the doctor."); *Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014) (reiterating that "[t]he ALJ must set forth his own interpretations and explain why they, rather than the doctors', are correct"); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Plaintiff argues that the ALJ also erred in his second reason for discounting Dr. Yamaguchi's opinion – finding that the opinion was extreme because, if true, Plaintiff

would be bedridden. Doc. 19 at 13. Dr. Yamaguchi opined that Plaintiff could continuously sit for only 30 minutes, continuously stand for only 30 minutes, sit for two hours or less in an eight-hour workday, and stand and walk for two hours or less in an eight-hour workday. He opined that Plaintiff had a total restriction in almost all listed activities, and could lift six to ten pounds and carry up to five pounds for five percent of the day or less. A.R. 793-95. Although the ALJ must interpret the medical evidence, in this case the ALJ overstated Dr. Yamaguchi's opinion when he described it as portraying Plaintiff as "bedridden." Under the opinion, Plaintiff's continuous sitting or standing would be quite limited, but she could either sit or stand for up to four hours out of eight. The Court does not find the ALJ's overstatement to be a clear and convincing reason for discounting Dr. Yamaguchi's opinion.

Although the ALJ's remaining four reasons for discounting Dr. Yamaguchi's opinion might be clear and convincing if the check-box opinion was the only documentation received from Dr. Yamaguchi, it is not. True, the 2016 check-box form included no contemporaneous treatment records, did not list any current diagnosis of conditions which supported Plaintiff's extreme limitations, and did not indicate a need for a hand-held device, such as a cane, even though the form included a space for such an indication. But other medical records from Dr. Yamaguchi's office are contained in the record, and, as Plaintiff notes, provide the detail the ALJ found missing. Plaintiff was seen by Dr. Yamaguchi on April 5, 2016, a few months before his challenged opinion. She reported a pain score of 7 out of 10, that she was struggling with activities of daily living, that her sleep was disrupted by her back pain, that her mood and appetite were also disrupted, and that nerve blocks performed in April 2015 were only 20% effective. A.R. 405. She reported that the pain was worsening and persistent. *Id.*

Dr. Yamaguchi found that Plaintiff was developing muscle weakness in her lower extremities, had severe pain with motion in her lumbar spine, and appeared chronically ill. A.R. 407-08. He diagnosed her with neuropathic pain, osteoarthritis, facet arthrosis, scoliosis, and chronic low back pain. A.R. 409. He scheduled her for steroid injections

in her back, noted that she was using a cane, and adjusted her course of pain medication. A.R. 408-09. These medical records, from a visit four months before the opinion the ALJ discounted, fill in virtually all of the gaps the ALJ highlighted. And records from earlier visits to Dr. Yamaguchi reflect similar findings. *See* A.R. 411-19. The Court concludes that the ALJ's reasons for discounting Dr. Yamaguchi's opinion are not clear and convincing.

### B. Evaluation of Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

At the hearing, Plaintiff testified that she has had back pain for twenty years. A.R. 41. Plaintiff testified that pain in her mid-back has made it difficult for her to climb stairs and bend down, and has caused her to fall up and down the stairs. A.R. 40-42. Because of her falls, Dr. Yamaguchi advised her to use a cane, which she testified she has used for several years. A.R. 42, 45. Plaintiff testified that her pain causes her to get only four hours of rest a night and to struggle with concentration and memory. A.R. 42-43, 49. Even with medication, Plaintiff testified that her back pain is constant, and that she rates her average daily pain between seven and eight out of ten. A.R. 44. To manage her pain, Plaintiff testified that she does exercises she was given from physical therapy, uses a heating pad, and lays down about four days a week to get off of her feet. A.R. 44-45.

Plaintiff testified she has difficulty standing up for more than fifteen minutes, and walking without stopping for more than twenty to thirty minutes. A.R. 46-47. After walking three blocks to a bus stop, Plaintiff described being tired and feeling a "stabbing" pain that goes through her right leg. A.R. 47. Plaintiff also does not do chores on a daily basis because of back pain. A.R. 51. Plaintiff testified that the injections Dr. Yamaguchi has administered help only temporarily. A.R. 52.

The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ then found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. A.R. 23. The ALJ gave three reasons: (1) Plaintiff's symptom testimony was unsupported by objective clinical findings in the record; (2) Plaintiff's symptom testimony was inconsistent with her own statements; and (3) Plaintiff's treatment has been conservative and does not reflect the level of treatment expected for an individual with her alleged disability. A.R. 23-25.

### 1. Symptom Testimony Not Supported by the Record.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen*, 80 F.3d at 1282 ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R.

§ 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.").

Unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, [he] may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283-84). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same).

In support of his first basis for discounting Plaintiff's testimony, the ALJ again relied on imaging studies – a pelvic x-ray in February 2014 showing a normal pelvis; a lumbar spine x-ray in February 2014 revealing very mild lumbar spine degenerative disc and join changes, with no acute pathology; and a lumbar spine x-ray in April 2014, which showed mild curvature in the lumbar spine, minimal hypotrophic degenerative changes, no fractures or focal osseous lesions, no subluxations, and mild facet arthropathy at L5 to S1. A.R. 23. The ALJ also referred to the July 2015 MRI findings that showed mild degenerative disc disease at all levels except for one level of moderate disease. A.R. 23-24. As the cases cited above explain, however, the ALJ may not discount Plaintiff's testimony regarding the severity of her pain because it is not born out by objective medical evidence. *Moisa*, 367 F.3d at 885; *Smolen*, 80 F.3d at 1282; *Bunnell*, 947 F.2d at 345-48. As also noted above, the ALJ is not a trained radiologist and the Court does not find his interpretation of highly technical medical studies to be clear and convincing. *See*

- 10 -

*Trevizo*, 871 F.3d at 683; *Garrison*, 759 F.3d at 1013-14; *see also Clifford*, 227 F.3d at 870.

The ALJ also referred to physical examinations from April 2014 (A.R. 321-323) and May 2014 (A.R. 363-370) as "revealing mostly normal findings and some with mild to moderate findings." A.R. 24. The ALJ discussed a 2015 physical examination of Plaintiff which noted "a stable gait with no falls, normal gait, normal cervical and thoracic spine, normal shoulder, normal hand, normal knees and normal hip examinations." A.R. 24. But the Court does not find a list of some "normal" findings in these mostly pre-disability examinations to be a clear and convincing reason for discounting Plaintiff's testimony when, as noted above, the record contains evidence of severe back pain and repeated efforts to treat that pain in 2015 and 2016. *See* A.R. 317-29, 378-82, 405-44.

### 2. Inconsistency with Plaintiff's Statements.

"In evaluating the claimant's testimony . . . the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). "While a claimant need not 'vegetate in a dark room' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citations omitted).

The ALJ noted that Plaintiff's pain management records "consistently documented an antalgic gait, full weight bearing pain with use of a cane," and "severe pain with range of motion in the hip, left knee, and right knee." A.R. 24. Without explaining why, the ALJ found these conditions – an antalgic gait, use of a cane, and severe pain – to be inconsistent with Plaintiff's own statements about her limited activities. *Id.* But these conditions seem to support Plaintiff's claims, and without some explanation for his

- 11 -

contrary conclusion, the ALJ has not provided a clear and convincing reason for discounting Plaintiff's testimony.

The ALJ then cited two examples from the medical record. First, five months before Plaintiff's alleged onset of disability, during a February 2014 examination:

> [c]laimant was able to sit in a chair, without discomfort, was able to stand, walk to an examination table, was able to get onto and sit on the examination table without assistance, and without difficulty. Claimant was also able to stand from a seated position and sit from a standing position without much difficult or assistance. . . . [C]laimant reported that she was able to complete self-care activities, including preparing meals, performing personal hygiene and performing light housework. She also reported she was able to drive a vehicle.

A.R. 24. Second, in January 2016, Plaintiff told her therapist: "I do a lot of walking and [am] always doing stuff around the house. I try to keep moving." A.R. 535.

The ALJ generally summarized the February 2014 examination accurately, although the notes from that exam also include complaints of pain in Plaintiff's lower back, pain radiating down her legs, and an abnormal gait. *See* A.R. 292-93. The ALJ does not discuss these observations or the fact that the exam was before Plaintiff's disability date.

The ALJ's description of the 2016 examination is not fully accurate. The exam was for Plaintiff's mental health issues, not her back problems, and although she did state that she did a lot of walking, she also reported that she "struggle[s] with lower back pain" and is unable to work because of her pain, which causes her depression. A.R. 535. The diagnosis from the visit included "Orthopedic Disorders," and the doctor noted that Plaintiff used a cane during the visit, that her "[g]ait is unsteady," and that Plaintiff "struggle[s] with . . . scoliosis and osteoporosis." *Id.* at 537-38. Among other objectives established during the visit was that Plaintiff would see her pain management specialist every one to three months. *Id.* at 542. The Court cannot conclude that medical notes from the two visits cited by the ALJ, one before Plaintiff's disability date and the other

described incompletely by the ALJ, constitute a clear and convincing reason for rejecting Plaintiff's symptom testimony.

The ALJ also stated that Plaintiff's testimony regarding her activities of daily living "cannot be objectively verified with any reasonable degree of certainty" – a fact that likely is true in every case of claimant testimony – and that her medical condition "is managed by medication and injection therapy." *Id.* at 24. The ALJ cited no part of the record in support of his assertion that Plaintiff's pain is adequately managed by medication and injection therapy, and the records from Dr. Yamaguchi cited above clearly suggest otherwise. *See id.* at 408-19. These were not clear and convincing reasons.

### 3. Conservative Treatment Modalities.

In assessing Plaintiff's credibility about [her] symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). An ALJ may "properly consider[] [a doctor's] failure to prescribe, and [Plaintiff's] failure to request, any serious medical treatment for . . . supposedly excruciating pain." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ discredited Plaintiff's testimony about the extent of her pain and limitations because he found that treatment modalities had been conservative, consisting of pain medication, physical therapy, and injection therapy. A.R. 25. The ALJ noted that Plaintiff had not undergone surgery and surgery had not been recommended. He stated:

> The claimant has not generally received the level of medical treatment one would expect for a totally disabled individual. Although the claimant has received treatment for her impairments, it has been essentially routine and conservative in nature. Arguably, with claimant's alleged severity of pain

- 13 -

and limitations, one would expect more significant findings on both the diagnostic imaging and exams as well as more complex treatment. Thus, the claimant's allegations regarding the severity of her symptoms and limitations are not consistent with her treatment history.

*Id.*

Plaintiff argues that the ALJ erred in interpreting her treatment as conservative. Doc. 19 at 25. The Court agrees. The ALJ cited no authority for his apparent views that surgery is an available remedy for all back issues and pain, or that nerve blocks and steroid injections into the spine are "essentially routine and conservative in nature." A.R. 25. And as the ALJ noted, Plaintiff's doctors have not recommended surgery. Although that could be because Plaintiff's symptoms are not sufficiently severe, it could also be because her condition is not amenable to surgical correction. The Court cannot conclude that Plaintiff's failure to receive surgery is a clear and convincing reason to discredit her testimony.

**V.      Scope of Remand.**

The ALJ erred in discrediting Plaintiff's symptom testimony and Dr. Yamaguchi's opinion. Plaintiff contends that, crediting this evidence as true, the Court must remand for an award of benefits. Doc. 19 at 28-29. Defendant counters that the appropriate remedy is a remand for further proceedings. Doc. 23 at 18-19.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis ... is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for

- 14 -

the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted).

The first step is satisfied. The ALJ failed to provide legally sufficient reasons for discounting Dr. Yamaguchi's opinion and Plaintiff's testimony.

Applying step two, the Court concludes that no outstanding issues must be resolved before a disability determination can be made. At the hearing before the ALJ, the following exchange occurred with the vocational expert:

> Q If we use Hypothetical #1 [which included standing or walking six hours a day, more than Plaintiff or Dr. Yamaguchi said was possible] and we took the non-exertional issue with regard to pain, either indicated by the Claimant in testimony or by Dr. Yamaguchi, as being moderately severe to severe and taking a person minimally off task at the lower level of 11%, how would that impact your answer?
>
> A That individual would not be able to maintain any work.

A.R. 55.

Applying step three, the Court finds that if Dr. Yamaguchi's opinion and Plaintiff's testimony are credited as true, no doubt exists as to Plaintiff's disability. The vocational expert was clear in her testimony that Plaintiff could not work with the pain conditions she and Dr. Yamaguchi described. The Court will remand for an immediate award of benefits.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is vacated and the cased is remanded for an immediate award of benefits. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 7th day of November, 2018.

*David G. Campbell*

David G. Campbell
Senior United States District Judge

- 15 -